413 F.2d 175
 L. G. RUDERER, Appellant,
v.
Eugene W. MEYER, Appellee.
L. G. RUDERER, Appellant,
v.
Burton K. PHILLIPS, Appellee.
L. G. RUDERER, Appellant,
v.
Joseph G. AMBROSE, Appellee.
L. G. RUDERER, Appellant,
v.
Virgil BROWN, Appellee.
L. G. RUDERER, Appellant,
v.
Morris DITTMAN, Appellee.
L. G. RUDERER, Appellant,
v.
Wayne R. SMITH, Appellee.
L. G. RUDERER, Appellant,
v.
Edward A. KOZIBOSKI, Appellee.
L. G. RUDERER, Appellant,
v.
Gerald L. BLACK, Appellee.
L. G. RUDERER, Appellant,
v.
Roger E. FOX, Appellee.
 Nos. 19133-19135.
 Nos. 19170-19174.
 No. 19182.
 United States Court of Appeals Eighth Circuit.
 July 7, 1969.
 Rehearing Denied July 28, 1969.
 Certiorari Denied November 17, 1969.
 
 See 90 S.Ct. 280.
 L. G. Ruderer, Collinsville, Ill., pro se.
 Irvin L. Ruzicka, Asst. U. S. Atty., St. Louis, Mo., for appellees, Veryl L. Riddle, U. S. Atty., was on the brief with Mr. Ruzicka.
 Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and LAY, Circuit Judges.
 BLACKMUN, Circuit Judge.
 
 
 1
 L. G. Ruderer, a former Saint Louis, Missouri, civilian employee of the United States Army Aviation Material Command (AVCOM) in 1966 and 1967 instituted in the Eastern District of Missouri 14 separate diversity actions against individual officials or employees of AVCOM. These suits resulted from the suspension of Ruderer's security clearance and his discharge from federal service.
 
 
 2
 Six of the 14 cases came to Judge Meredith's docket. The first of these, one begun in 1966 against William Gessmer, plaintiff's immediate supervisor, was dismissed with prejudice on May 5, 1967, and is not now before us. In the other five, motions to dismiss, filed by the United States Attorney on behalf of the respective defendants, were sustained. Ruderer v. Brown, 279 F.Supp. 707 (E.D.Mo.1967). Four cases came to Chief Judge Harper's docket. They were dismissed. Ruderer v. Gerken, 284 F. Supp. 449 (E.D.Mo.1968). Those four cases are not now before us. The four remaining cases came to Judge Regan's calendar. He, too, sustained motions to dismiss filed by the government and did so, under Rule 12(b) (6), Fed.R.Civ.P., for failure to state a claim upon which relief could be granted. Judge Regan's separate orders of dismissal are not reported.
 
 
 3
 Plaintiff Ruderer now appeals in forma pauperis the dismissals of the five cases by Judge Meredith and the four cases by Judge Regan. Although the cases and the appeals are separate and distinct, we consider them all in one opinion.
 
 
 4
 The plaintiff appears here pro se. We note Judge Meredith's observation, however, 279 F.Supp. at 708, that, for the cases before him, the court appointed an attorney to ascertain whether the plaintiff was without funds and whether he had meritorious causes of action. The attorney so appointed reported that the plaintiff in fact was without funds to prosecute his suits and that the defendants before Judge Meredith had an absolute defense.
 
 
 5
 With each case dismissed prior to the filing of a formal answer, we must, in passing on the sufficiency of the complaint, accept as true the well-pleaded factual allegations. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Jenson v. Olson, 353 F.2d 825, 828 (8 Cir. 1965). Although the complaints are not identical, we believe we fairly state such facts as follows:
 
 
 6
 Plaintiff Ruderer's position as a group chief with AVCOM in Saint Louis was subject to federal civil service. On November 25, 1964, he was notified in writing of his dismissal from this position on the ground that he had made false, irresponsible and malicious charges against fellow employees. Ruderer demanded and was given a formal hearing on these charges. This took place on various dates during the period from July 21 through September 27, 1965. The substantial transcript of this hearing was forwarded to the appointing authority, the Commanding General, United States Army Mobility Command; on review there the plaintiff's dismissal was affirmed June 13, 1966. Ruderer further appealed and the transcript was sent to the Saint Louis Region, United States Civil Service Commission; the dismissal was affirmed there September 30, 1966. On still further appeal the transcript was forwarded to the Board of Appeals and Review, United States Civil Service Commission; the dismissal was affirmed there February 10, 1967. This brought the administrative review proceedings to a conclusion.
 
 
 7
 Thereafter, the last 13 suits hereinabove described, including the nine presently before us on appeal, were filed by Ruderer. Each purports to be against an AVCOM official or employee in his private capacity. In each, as we read the involved complaint, Ruderer seeks actual and punitive damages aggregating more than $100,000 for conspiring wrongfully to discharge the plaintiff and for defamation on account of utterances made or material produced at the administrative hearing. The first six of these cases are:
 
 
 8
 1. No. 67C94 (Judge Regan), filed March 22, 1967, against Roger Fox, Chief of the AVCOM Security Office;
 
 
 9
 2. No. 67C113 (Judge Meredith), filed April 11, 1967, against Virgil Brown, Colonel and Director of the AVCOM Directorate of Personnel;
 
 
 10
 3. No. 67C123 (Judge Harper), filed in April 1967, against Fred E. Gerken, Lieutenant Colonel and Director of the AVCOM Directorate of Technical Data, Cataloguing, and Standardization;
 
 
 11
 4. No. 67C131 (Judge Harper), filed in April 1967, against Charles W. Manahan, Chief of the AVCOM General Items Section of the Directorate, who, for a time, was Ruderer's immediate supervisor;
 
 
 12
 5. No. 67C140 (Judge Meredith), filed May 1, 1967, against Morris Dittman, Chief of AVCOM's Civilian Personnel Office;
 
 
 13
 6. No. 67C147 (Judge Meredith), filed May 8, 1967, against Wayne R. Smith, Deputy Director of the AVCOM Directorate of Technical Data, Cataloguing, and Standardization.
 
 
 14
 The complaint in each of the four cases of the foregoing list which are now before us specifies the named defendant's official government position. In the complaint in each of the remaining cases before us the defendant's official government position is not clearly stated; the position becomes apparent, however, from the plaintiff's requests for interrogatories, their references to the hearing transcript, or other papers filed by the plaintiff. Chronologically, the remaining cases are:
 
 
 15
 7. No. 67C192 (Judge Regan), filed June 12, 1967, against Eugene W. Meyer, subordinate of Mr. Dittman in the AVCOM Civilian Personnel Office;
 
 
 16
 8. No. 67C204 (Judge Regan), filed June 22, 1967, against Joseph G. Ambrose, Chief of the Technical Data Division of the AVCOM Directorate where the plaintiff was employed;
 
 
 17
 9. No. 67C208 (Judge Regan), filed June 26, 1967, against Burton K. Phillips (Philips), Colonel and Command Judge Advocate of AVCOM;
 
 
 18
 10. No. 67C215 (Judge Meredith), filed June 29, 1967, against Edward A. Koziboski, Section Chief of the AVCOM Directorate where Ruderer was employed;
 
 
 19
 11. No. 67C227 (Judge Meredith), filed July 12, 1967, against Gerald L. Black, supervisor of defendant Meyer in the Civilian Personnel Office;
 
 
 20
 12. No. 67C247 (Judge Harper), filed shortly thereafter, against Stanley S. Shepherd, Group Chief of the same section of the AVCOM Directorate in which the plaintiff was a group chief;
 
 
 21
 13. No. 67C259 (Judge Harper), filed shortly thereafter, against George W. Harrison, Chief of the branch of the AVCOM Directorate where Ruderer was employed.
 
 
 22
 The defendants rested their respective motions on the absence of defamatory material, on the running of the 2-year limitation period prescribed for defamation actions by Mo.Rev.Stat. § 516.100 and .140 (1959), V.A.M.S., and on absolute privilege.
 
 
 23
 The several files disclose the presence of various motions by the plaintiff for summary judgment, for disqualification of the judge, for the convening of a three-judge court, for injunctive relief against the Department of Justice, for similar relief against the representation of the defendants by the United States Attorney, and other requests.
 
 
 24
 Despite references in Ruderer's briefs to general constitutional rights and to the criminal conspiracy statute, 18 U.S.C. § 241, what we obviously have here are nothing more than common law defamation diversity suits arising from the plaintiff's discharge from his civilian government employment. Ruderer in his several briefs describes the suits essentially as actions for "damages for torts in libels, slander and for felonious activities".
 
 
 25
 The actions, and each of them, focus entirely on what was said or adduced at the administrative hearing which plaintiff Ruderer demanded, and was granted, to test the propriety of his discharge. It thus was a proceeding which he requested and instigated and which followed as an established part of the procedure designed to afford appropriate protection to a civil service employee when his job is threatened. The utterances, both spoken and written, which are here complained of, were forthcoming not in the public press or elsewhere in the public arena but internally and in an administrative procedure. They did, of course, result in the plaintiff's discharge, and therein lies the rub.
 
 
 26
 This kind of case, as frequently has been observed, touches upon the conflict the protection of the individual citizen against pecuniary damage caused by op-between "two considerations of high importance", namely, "on the one hand, pressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities." Barr v. Matteo, 360 U.S. 564, 565, 79 S.Ct. 1335, 1336, 3 L.Ed.2d 1434 (1959) (opinion of Mr. Justice Harlan). See, also, Judge Learned Hand's frequently cited opinion in Gregoire v. Biddle, 177 F.2d 579, 581 (2 Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363.
 
 
 27
 This court, too, has struggled with the conflict between the principle of official immunity and the need for redress for the invasion of a private right. Cases which have come to us have involved a variety of factual situations and different kinds of status. See, for example, Brictson v. Woodrough, 164 F.2d 107, 109 (8 Cir. 1947), cert. denied, 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772; Gibson v. Reynolds, 172 F.2d 95 (8 Cir. 1949), cert. denied, 337 U.S. 925, 69 S.Ct. 1170, 93 L.Ed. 1733; Meredith v. Van Oosterhout, 286 F.2d 216, 220-222 (8 Cir. 1960), cert. denied, 365 U.S. 835, 81 S.Ct. 749, 5 L.Ed.2d 745; Heasley v. Davies, 342 F.2d 786, 788 (8 Cir. 1965); Johnston v. Cartwright, 355 F.2d 32, 35-38 (8 Cir. 1966).
 
 
 28
 We conclude that these appeals by plaintiff Ruderer are clearly controlled by Barr v. Matteo, supra, and by its companion case of Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959). Barr was Acting Director of the Office of Rent Stabilization. Howard was a naval captain and Commander of the Boston Shipyard. These offices are not unlike those held by some of the defendants here. Mr. Justice Harlan in Barr announced the judgment of the Court and delivered an opinion in which three other Justices joined. He outlined some of the history of the privilege concept and the reasons for privilege. He concluded, 360 U.S., pp. 572-575, 79 S.Ct. p. 1341, that the principle is not properly to be restricted to executive officers of cabinet rank; that it is not a badge of exalted office but an expression of a policy; that, with government so complex, there must be delegation of authority to officers of lower rank; that it "is not the title of his office but the duties with which the particular officer * * * is entrusted * * * which must provide the guide" to immunity from civil defamation suits; and that "[t]he fact that the action here taken was within the outer perimeter of petitioner's line of duty is enough to render the privilege applicable, despite the allegations of malice in the complaint * * *." The line of demarcation, thus, is "the outer perimeter of duty".
 
 
 29
 Although four Justices dissented in Barr and three in Howard, we feel that even the dissenters' respective views in those cases do little by way of redounding to Ruderer's benefit in these. A significant factual point of division in Barr was a press release by the defendant. Mr. Justice Black, in concurring, felt that the subject matter of the press release was germane to the proper functioning of the agency and that, if there was to be a restraint, it should be imposed expressly by Congress and not by general libel laws. The Chief Justice, whom Mr. Justice Douglas joined, was concerned, in dissent, about extending immunity to public statements of lesser officials. He recognized, however, pp. 582-584, 79 S.Ct. 1335, that there were reasons for affording immunity for "internal reports" and presidentially-appointed officials who are policy makers. Mr. Justice Brennan, in dissent, would grant no more than a qualified privilege which would exist unless it appears that the communication is defamatory, untrue, and malicious. Mr. Justice Stewart, in dissent, could not agree that the issuance of the press release was in the line of duty.
 
 
 30
 Similarly, in Howard v. Lyons difficulty centered in a statement which purported to be an official memorandum to bureau chiefs but which was also released to members of a state's congressional delegation. The Justices of the majority concluded that a claim of privilege by a federal officer is to be judged by federal, and not state, standards and that the trial court's finding that the release was in discharge of official duties was correct. Mr. Justice Black separately concurred for the reasons he expressed in Barr. The Chief Justice, Mr. Justice Douglas, and Mr. Justice Brennan again dissented.
 
 
 31
 Thus in Barr v. Matteo and in Howard v. Lyons we have the added and significant facts of a press release and of a release to members of Congress. In Ruderer's cases we have nothing comparable. We have only statements made and documents submitted in the routine of the administrative hearing by defendants who occupied positions in the governmental job structure and who worked with, or were superior to, the plaintiff or charged with personnel responsibilities. The statements, both oral and written, were uttered in the line of duty and responsibility.
 
 
 32
 Clearly, the Justices of the majority in both Barr and Howard would uphold the privilege in each of plaintiff Ruderer's cases. Equally clearly, it seems to us, the dissenters in Barr and Howard would agree that those two cases are precedent for the defense positions here and would concede that their concern arising from public or semi-public releases is not present here because there is no factual counterpart to those releases. Finally, we feel that, in view of the internal nature of the utterances which Ruderer accuses, the Barr and Howard dissenters, except Mr. Justice Brennan with his approach of qualified privilege, would find themselves sympathetic to the application of the privilege on the Ruderer facts. In any event, this court is bound by Barr and Howard.
 
 
 33
 Precisely in point is Preble v. Johnson, 275 F.2d 275 (10 Cir. 1960). Preble was director of a maintenance control program at a Naval Air Technical Training Center. Morale problems and personnel friction developed. Preble, feeling that his efforts were not receiving proper support from his superiors, commenced an authorized grievance proceeding. That same month he was removed from his directorship and demoted to a draftsman's job. As a result of the findings of the grievance committee, he was discharged. The acts affecting his civil service status were appealed through the Civil Service Commission to the Court of Claims.
 
 
 34
 Preble instituted seven libel cases each against a federal officer or employee. The accused statements were made in the course of the grievance proceeding and related investigations and described in detail contacts and dealings with Preble and reflected upon his fitness and efficiency. Some were by civil service employees at the request of and directed to the chairman of the grievance committee. Others were by employees to an investigator for the Commission or to another officer authorized to investigate the matter. One was the memorandum of the base commanding officer which gave Preble notice of his discharge.
 
 
 35
 Chief Judge Murrah, in writing for the court, held, 275 F.2d at 278, that the statements were absolutely privileged if made within the outer perimeter of the utterer's line of duty; that a statement is privileged if it is "deemed appropriate to the exercise of the utterer's office or station"; that the defendants "had a clear duty to report to proper authorities causes of disruption in the services they perform, or affecting such services, at the peril of being indifferent if not derelict in their responsibilities"; that with one exception the statements were made internally in response to inquiries that on their face were manifestly proper; and that as to the excepted statement, namely, that of the base commanding officer, he was not acting outside his appropriate authority in reducing to writing his reasons for Preble's discharge.
 
 
 36
 The status of the respective defendants in Preble v. Johnson, the base commander's memorandum notice of discharge, the grievance procedure, and the Civil Service Commission review all have their counterparts in Ruderer's cases. We agree with the conclusion reached by the Tenth Circuit and we hold here, as it did there, that the allegedly defamatory statements of the respective present defendants were made within the scope of official duties and were privileged.
 
 
 37
 Other cases of similar import and which afford precedent here are: Pagano v. Martin, 397 F.2d 620 (4 Cir. 1968), cert. denied, 393 U.S. 1022, 89 S.Ct. 628, 21 L.Ed.2d 565 (ship's officers' report of performance of an enlisted man); West v. Garrett, 392 F.2d 543 (5 Cir. 1968) (intraoffice memorandum submitted to deputy civilian personnel oficer at arsenal complaining about strained relations and bad morale due to plaintiff's attitude); Le Burkien v. Notti, 365 F.2d 143 (7 Cir. 1966) (notification of termination by regional employment supervisor for federal agency stating why employee's work performance was unsatisfactory); Chavez v. Kelly, 364 F.2d 113 (10 Cir. 1966) (information passed by narcotics officer to customs officer as to possible smuggling activity); Chafin v. Pratt, 358 F.2d 349, 352-354 (5 Cir. 1966), cert. denied 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105 (reports by fellow government employees and notices to plaintiff culminating in her voluntary retirement for disability); Keiser v. Hartman, 339 F.2d 597 (3 Cir. 1964), cert. denied, 381 U.S. 934, 85 S.Ct. 1764, 14 L.Ed.2d 699 (alleged libel by fellow employees to secure Agriculture Department employee's discharge); Molever v. Lindsey, 289 F.Supp. 832 (E.D.Mich. 1968) (statement by bank examiner to board of directors as to misapplication of funds); Camero v. Kostos, 253 F. Supp. 331 (D.N.J.1966) (prosecuting attorney's letter to Quartermaster Depot Commander as to employee's alleged acceptance of a bribe); Inman v. Hirst, 213 F.Supp. 524 (D.Neb.1962) (official reprimand of employee by Assistant Air Force Base Supply Officer). See Becker v. Philco Corp., 372 F.2d 771 (4 Cir. 1967), cert. denied, 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473, with dissents by the Chief Justice and Mr. Justice Douglas.
 
 
 38
 We need only remind ourselves (a) that upon the pleadings and the files defendant Fox was Chief of the AVCOM Security Office and possessed the duty to concern himself with Ruderer's security clearance; defendant Brown was head of AVCOM's Directorate of Personnel and officially approved dismissal charges; defendant Dittman was Chief of AVCOM's Civilian Personnel Office and supervised formal charges of dismissal; defendant Smith was Deputy Director where Ruderer was employed, testified at the official hearing as to the plaintiff's rating, the suspension of his clearance, his dismissal notice, and the announcement to personnel; defendant Meyer was a subordinate to Dittman and composed the dismissal charge as a part of his duty; defendant Ambrose was Chief of the Technical Data Division where Ruderer was employed and was a member of the chain of command through whom the charge, the suspension, and the announcement passed; defendant Philips was the Command Judge Advocate, and in this capacity was appropriately consulted and gave advice in the preparation of the charges against Ruderer; defendant Koziboski was Ruderer's section chief and supervisor in a position of authority over the plaintiff and participated in the official charges; and defendant Black was a supervisor in the Personnel Office and officially directed the preparation of, and approved, the charges, and (b) that these recited acts are the ones on which Ruderer's defamation actions are based. When we do this, we are inevitably drawn to the conclusion that what is charged against these respective defendants, in the several suits before us, is, in every instance, far, far inside "the outer perimeter" of the particular defendant's line of duty. We have no alternative than to affirm.
 
 
 39
 The order appealed from in each of the nine cases is affirmed.