**Carl Heinz KNUEMANN**

v.

**Evelyn NARANJO.**

**Civ. No. 73–6–K.**

United States District Court,
D. Maryland.

June 25, 1974.

Carl Heinz Knuemann, pro se.

George Beall, U. S. Atty., Herbert Better, Asst. U. S. Atty., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Mrs. Evelyn Naranjo, the defendant in this case, and fourteen fellow employees of the National Institute of Mental Health signed a memorandum dated December 11, 1969 which voiced the complaint that the plaintiff, Mr. Carl H. Knuemann, a co-worker, had become a source of disruption in the Computer Services Branch and which included their request that alleviative action be taken.[1] Effective as of February 12, 1971, Knuemann was removed from his position as Computer Systems Analyst with the National Institute of Mental Health (NIMH). The reasons given in a document titled *Notification of Personnel Action* are as follows: "[d]etrimental behavior and conduct which destroyed constructive relations with other employees causing disruption of program activities and work stoppages."

On September 19, 1972 Knuemann, acting *pro se*, instituted an action against Naranjo in the District Court of Maryland for Montgomery County. Although the complaint filed in that Court does not clearly specify the precise nature of his claim against Naranjo, Knuemann's suit seemingly is based on her

---

1. TO: Chief, Personnel Management Branch, OAM, NIMH DATE: December 11, 1969
THRU: Acting Chief, Computer Systems Branch, OAM, NIMH
FROM: The Undersigned Computer Systems Branch Personnel
SUBJECT: Mr. Carl H. Knuemann

It is the opinion of the undersigned, members of the Computer Systems Branch, that the recent behavior of Mr. Carl H. Knuemann, a co-worker, has become a source of considerable disruption, anxiety, and concern.

During the past few months Mr. Knuemann has done the following things:

He has constantly interrupted Branch personnel at work to air trivial personal grievances against his Section Chief, his Branch Chief, the Branch Administrative Officer, and the Personnel Director, among others.

He has made lengthy phone calls in a loud and angry tone, disturbing those in the immediate vicinity.

He has made allegations of incompetency about Branch personnel, the Branch Administrative Officer, and personnel of the Manpower and Statistical Analysis Branch, and the Program Analysis Section, Division of Extramural Research Programs. He has engaged in tirades against all of NIMH, the entire Federal Government, indeed the whole world, in which most everyone is accused of "incompetency."

He has badgered people to try to make them admit that they had seen others greet him with a Nazi salute.

He has told Branch employees that he is "trouble," causing them to believe that his conduct is deliberate and that he takes pride in it.

He has tried to make a cause celebré out of a harmless prank, invoking ridiculous charges of counterfeiting.

He has caused employees of the Branch extreme emotional upset.

He appears convinced that he has a mission to reform the Government, particularly NIMH, and apparently confuses recent events with events that happened in the past.

He has displayed a Jekyll and Hyde behavior that is alarming, for, in his excited mood, he shouts out accusations and threats to and about his colleagues, causing alarm or at least unease among his listeners.

He has succeeded in establishing a pervading atmosphere of tension, and trepidation in the Computer Systems Branch. Some employees fear that the next step may be an overt act of violence directed against one of them.

His conduct, in short, has been abnormal, disruptive and frightening, and he has rendered the conduct of normal business difficult if not impossible.

This bill of particulars could go on and on. Each of us can substantiate one or more of the above statements.

We feel that Mr. Knuemann's tirades and rages, his threats and intimidations, whether direct or subtle, and his generally abrasive dealings with us and others in and out of NIMH, have produced an unsatisfactory working atmosphere for the employees of this Branch.

We would like to be on record as expressing our concern for a person who is clearly troubled. At the same time, we do feel that no one person, no matter what personal difficulties he may be having, should be allowed to persist in behavior detrimental to the normal operation of the Computer Systems Branch.

We urge you to take whatever corrective or alleviative action you can.

signature of the December 11, 1969 memorandum. In subsequent documents filed in this Court, Knuemann has stated his allegations with more specificity, charging Naranjo with libel, misrepresentation of the fact that she was Knuemann's co-worker, conspiracy to deprive Knuemann of his civil right to his job, and malicious defamation of character.

On January 2, 1973, Naranjo removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1);[2] and thereafter filed a motion for summary judgment stating that her participation in the December 11, 1969 memorandum is protected by the privilege afforded by Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Naranjo also asserts that Knuemann's suit is barred by the one year statute of limitations for libel and slander actions found in 5B Md. Ann.Code art. 57, § 1 (1972). Knuemann, in his cross-motion for summary judgment and in his opposition to defendant's summary judgment motion, seemingly contends: (1) defendant took maternity leave from NIMH on November 11, 1969 and never returned to federal employment, so that as of December 11, 1969 she was not entitled to the immunity afforded by Barr v. Matteo, *supra*; (2) defendant, who had a lower rank than plaintiff, did not have a work assignment that brought her "in direct 'line of duty' contact with the plaintiff";[3] and (3) the limitations period should be longer than one year in suits against federal officials.

 Although plaintiff has charged defendant with conspiracy to violate his civil rights and with misrepresentation, his action constitutes nothing more than a charge of libel.[4] Government officials and employees are immune from tort liability for statements (either oral or written) made by them in the performance of their official duties. Barr v. Matteo, *supra*; Pagano v. Martin, 397 F.2d 620 (4th Cir. 1968), cert. denied, 393 U.S. 1022, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969). Federal and not state law governs the application of the immunity doctrine to federal officers and employees. Howard v. Lyons, 360 U.S. 593, 597, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959). Under the federal standard as announced in Barr v. Matteo, *supra*; Howard v. Lyons, *supra*, and in the multitude of the federal cases decided in the wake of Barr v. Matteo, ". . . there is only one prerequisite for the application of immunity: the action taken must be within the outer perimeter of the executive official's line of duty. . . . That the federal officer acted with malice makes no difference. Barr v. Matteo, supra [at 575] . . ." Chafin v. Pratt, 358 F.2d 349, 353 (5th Cir.), cert. denied, 385 U.S. 878, 87 S.Ct. 159, 17 L.Ed.2d 105 (1966). Thus, this case presents two questions for decision: (1) whether Naranjo was an employee of the federal government when she signed the memorandum; and (2) whether her action was within the outer perimeter of her duties as a federal employee.

 In an affidavit filed with this Court on March 12, 1974, Naranjo states that she began employment with the National Institute of Mental Health on October 8, 1967 in a temporary capacity. On November 5, 1967 she was given a career conditional appointment; thereafter, she continued in that capacity until she resigned on February 3, 1970. She states that from November 19, 1969 to the date of her resignation she was on maternity leave. Until December 16, 1969 she was on leave with pay; after that date she was on leave without pay. Her child was born on December 23, 1969.

---

2. *See* West v. Garrett, 392 F.2d 543, 544 (5th Cir. 1968). *Cf.* Gurda Farms, Inc. v. Monroe County Legal Assistance Corp., 358 F.Supp. 841 (S.D.N.Y.1973).

3. The words are those of plaintiff in a memorandum filed herein.

4. *See* Ruderer v. Meyer, 413 F.2d 175, 178 (8th Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969).

Naranjo states that the memorandum was brought to her home where she signed it on December 11, 1969. She further states that after the birth of her child she intended to return to work, but decided not to do so after an unsuccessful attempt to find a suitable person to care for her child. Accordingly, she tendered her resignation effective as of February 3, 1970, a fact which is substantiated by documents in the official court file in this case supplied by the Department of Health, Education and Welfare.

Although defendant was at home on maternity leave when the memorandum dated on December 11, 1969 was submitted, the record establishes that she was still a federal employee receiving salary as of that time. The fact that she did not return to active duty is immaterial, especially in light of her uncontroverted statement that as late as December 23, 1969 she intended to return to work, and made efforts to arrange to be able to do so.

Thus it is necessary to determine only whether Naranjo's actions were within the perimeter of her line of duty.[5] Mr. Justice Harlan, for himself and three other members of the Court, wrote in *Barr, supra* at 572–573, that the privilege of immunity extends not only to high ranking federal officials and that "[t]he privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government."

In West v. Garrett, 392 F.2d 543, 544 (5th Cir. 1968), the Fifth Circuit, in a case seemingly directly on point with the instant case, stated:

This libel suit grew out of an intra-office memorandum written by defendants-appellees and submitted to the Deputy Civilian Personnel Officer of the Command, who is in the supervisory chain over appellees but is not their immediate superior. In this memorandum, the employees complained that appellant, Dorothy West, was causing strained relations and bad morale in their office by her attitude toward her co-workers, her immediate superior, and her work. The memorandum resulted in appellant's transfer to another office and thereafter she filed this libel action against eleven of her co-workers at the U.S. Army Missile Command, Redstone Arsenal, Huntsville, Alabama. The case was removed to the federal court under 28 U.S.C. § 1442(a)(1) where the district court entered a summary judgment for appellees, reasoning that the filing of a complaint about a fellow employee's attitude was "within the outer perimeter" of appellees' official duties and thereby privileged. Appellant had argued against this because she contended that the complaint had not been submitted through the proper channels. The district court disagreed, holding that the regulations had been followed and even if appellees did not comply with the technical requirements for submission of complaints, this failure did not create a cause of action for libel.

We agree with the district court that under Barr v. Matteo, 1959, 360

---

5. In her affidavit filed in this Court in connection with her motion for summary judgment, defendant states: "I signed the December 11, 1969 memorandum (Exhibit A) based on my experience with Mr. Kneumann [sic] as an employee of the National Institute of Mental Health." Furthermore, in a memorandum filed in this case, plaintiff reveals that both he and defendant worked in the Data Processing Branch of the National Institute of Mental Health, albeit on different floors. Plaintiff contends in the same document that he was on sick leave for most of the period stretching from October to December 1969, and that he "had indeed very little time for misconduct on the job". Although he may have frequently been absent, Knuemann admits that he was in attendance some 281 hours during that period of time. It appears uncontroverted that defendant did have contact in the job setting with plaintiff, and that her function as a federal employee could have been affected by plaintiff's conduct.

U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, a federal officer's action or statement need only be within the "outer perimeter" of his line of duty in order to be privileged and that the conduct here was within this "outer perimeter" because it is clear that federal employees have a duty to file complaints about fellow employees' attitudes in situations like the present. The case of Preble v. Johnson, 10th Cir. 1960, 275 F.2d 275, 278–279 is squarely in point:

> Surely these federal servants had a clear duty to report to proper authorities causes of disruption in the services they perform, or affecting such services, at the peril of being indifferent if not derelict in their responsibilities. Moreover, with one exception, viz., Parrish, the utterances were made internally in response to inquiries that on their face were manifestly proper. And assuredly the privilege of these employees does not turn upon whether they independently and accurately ascertained the technical correctness of the grievance proceeding. With reference to Parrish, whose privilege is most strenuously challenged, he acted pursuant to a positive mandate of law. And even if his acts did not accord with prescribed formalities, we cannot believe he was acting outside his appropriate authority in reducing to writing his reasons for Preble's discharge.

Since the written complaint submitted to a superior is privileged, we also agree with the district court that it should not become unprivileged as a matter of libel law by reason of having been submitted to the wrong superior. Therefore, the decision of the district court is affirmed.

In Ruderer v. Meyer, 413 F.2d 175 (8th Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969), a suit brought by a discharged federal employee of the United States Aviation Material Command against various individuals who made statements, both oral and verbal, concerning him during administrative hearings, Judge (now Mr. Justice) Blackmun concluded that the statements were absolutely privileged and stated (at 179):

> Although four Justices dissented in *Barr* and three in *Howard,* we feel that even the dissenters' respective views in those cases do little by way of redounding to Ruderer's benefit in these. A significant factual point of division in *Barr* was a press release by the defendant. Mr. Justice Black, in concurring, felt that the subject matter of the press release was germane to the proper functioning of the agency and that, if there was to be a restraint, it should be imposed expressly by Congress and not by general libel laws. The Chief Justice, whom Mr. Justice Douglas joined, was concerned, in dissent, about extending immunity to public statements of lesser officials. He recognized, however, pp. 582–584, 79 S.Ct. 1335, that there were reasons for affording immunity for "internal reports" and presidentially-appointed officials who are policy makers. Mr. Justice Brennan, in dissent, would grant no more than a qualified privilege which would exist unless it appears that the communication is defamatory, untrue, and malicious. Mr. Justice Stewart, in dissent, could not agree that the issuance of the press release was in the line of duty.
>
> Similarly, in Howard v. Lyons difficulty centered in a statement which purported to be an official memorandum to bureau chiefs but which was also released to members of a state's congressional delegation. The Justices of the majority concluded that a claim of privilege by a federal officer is to be judged by federal, and not state, standards and that the trial court's finding that the release was in discharge of official duties was correct. Mr. Justice Black separately concurred for the reasons he expressed in *Barr.* The Chief Justice, Mr. Justice Doug-

las, and Mr. Justice Brennan again dissented.

Thus in Barr v. Matteo and in Howard v. Lyons we have the added and significant facts of a press release and of a release to members of Congress. In Ruderer's cases we have nothing comparable. We have only statements made and documents submitted in the routine of the administrative hearing by defendants who occupied positions in the governmental job structure and who worked with, or were superior to, the plaintiff or charged with personnel responsibilities. The statements, both oral and written, were uttered in the line of duty and responsibility.

Clearly, the Justices of the majority in both *Barr* and *Howard* would uphold the privilege in each of plaintiff Ruderer's cases. Equally clearly, it seems to us, the dissenters in *Barr* and *Howard* would agree that those two cases are precedent for the defense positions here and would concede that their concern arising from public or semi-public releases is not present here because there is no factual counterpart to those releases. Finally, we feel that, in view of the internal nature of the utterances which Ruderer accuses, the *Barr* and *Howard* dissenters, except Mr. Justice Brennan with his approach of qualified privilege, would find themselves sympathetic to the application of the privilege on the Ruderer facts. In any event, this court is bound by *Barr* and *Howard*.[6]

In Frommhagen v. Glazer, 442 F.2d 338 (4th Cir. 1971), cert. denied, 404 U. S. 1038 (1972), Judge Duniway wrote (at 340):

\* \* \* The principal significant difference between this case and Barr v. Matteo is that there the alleged libel was in an agency press release, whereas here [the defendant's] memorandum was sent only to persons with-

in the agency, and each of them was a person to whom it was proper for him to send it. Thus this is a stronger case for immunity than Barr v. Matteo. See dissenting opinion of Chief Justice Warren, 360 U.S. at 583–584, 79 S.Ct. 1335, 3 L.Ed.2d 1434. See also Howard v. Lyons, 1959, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454. *See* Preble v. Johnson, 10 Cir., 1960, 275 F.2d 275, 277–279; cf. West v. Garrett, 5 Cir., 1968, 392 F.2d 543, 544.

The views expressed in *West, Ruderer* and *Frommhagen* are completely applicable in this case. The applicability of Barr v. Matteo herein calls for Naranjo to be afforded immunity from the liability asserted by Knuemann. This Court so concludes. Accordingly, the limitations defense raised by defendant need not be reached. For the reasons stated, plaintiff's motion for summary judgment is hereby denied and defendant's motion is hereby granted. Judgment will accordingly be entered for defendant.

---

6. *See also* the cases cited in *Ruderer* at 180 including West v. Garrett, *supra*, and Pagano v. Martin, *supra*.