George PREBLE, Appellant,
v.
J. B. JOHNSON, Appellee.

George PREBLE, Appellant,
v.
Tom J. GOINS, Appellee.

George PREBLE, Appellant,
v.
Claude A. PUCKETT, Appellee.

George PREBLE, Appellant,
v.
Ray TAYLOR, Appellee.

George PREBLE, Appellant,
v.
William H. JUERGENS, Appellee.

George PREBLE, Appellant,
v.
L. W. PARRISH, Appellee.

George PREBLE, Appellant,
v.
G. E. HORNE, Appellee.
Nos. 6184–6190.

United States Court of Appeals
Tenth Circuit.
Jan. 15, 1960.

Thomas E. Bennett, Oklahoma City, Okl., for appellants.

Leonard L. Ralston, Oklahoma City, Okl. (Paul W. Cress, Oklahoma City, Okl., was with him on brief), for appellees.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and CHRISTENSON, District Judge.

MURRAH, Chief Judge.

■ This is a consolidated appeal from summary judgments in seven libel cases, each denying appellant Preble recovery against a federal officer or employee on the ground of absolute privilege. The cases were properly removed to the federal district court under 28 U. S.C. § 1442(a) (1).

■ Prior to filing briefs on the merits, appellant moved in this court to amend his notices of appeal to effect his appeal from the judgments entered February 6, 1959, rather than from orders entered March 30, 1959, denying timely motions for new trial. Appellees filed countervailing motions to dismiss on the ground that the orders denying new trial were not appealable, and alternatively to affirm on the ground that in any event, the only question raised was whether the trial court abused its discretion in denying the motions for new trial. We have withheld disposition of these motions made in our court until the case was heard on the merits.

We do not dispose of cases on technicalities save where compelled by our jurisdictional limits, or by the requirements of orderly judicial administration. A denial of new trial is technically appealable, see Roberts v. Sawyer, 10 Cir., 252 F.2d 286; Creedon v. Loring, 1 Cir., 249 F.2d 714, and appellant's notices of appeal were timely to effect an appeal from the judgments. See Suggs v. Mutual Ben. Health & Accident Ass'n, 10 Cir., 115 F.2d 80. Since appellant's formal error is thus clearly harmless, and since his manifest intent is to effect a full appeal as from the judgments, his motion is granted and appellees' denied.

See Atlantic Coast Line R. Co. v. Mims, 5 Cir., 199 F.2d 582, 583; Sobel v. Diatz, 88 U.S.App.D.C. 329, 189 F.2d 26, 27; United States v. Ellicott, 223 U.S. 524, 539, 32 S.Ct. 334, 56 L.Ed. 535; 6 Moore, Federal Practice 3892–93 (2d Ed.).

Coming now to the merits, the cases are presented on these facts. In February 1956, Preble was appointed director of a new maintenance control program instituted at that time, in accordance with Navy policy, at the Naval Air Technical Training Center, Norman, Oklahoma. The program was such that severe morale problems and personnel friction accompanied its effectuation wherever attempted, and NATTC was no exception. By December 1956, Preble was convinced that his efforts were not receiving proper support from his superiors, and commenced an authorized grievance proceeding in the hope of improving the situation. That same month, Preble was removed from his directorship and given a draftsman job, with an accompanying change in civil service rating from GS–10 to GS–5. As a result of the findings of a grievance committee, appointed by the base commanding officer to investigate Preble's grievance, Preble was discharged in April 1957. These acts affecting his civil service status have been appealed through the United States Civil Service Commission to the Court of Claims, and are not before us except as evidence of damages resulting from the alleged libels.

Each of the accused statements, made in the course of the grievance proceeding and related investigations, described in detail various incidents arising from on-the-job contacts and dealings with Preble, and reflected upon his fitness and efficiency in the discharge of his official duties. The Johnson, Goins, Taylor and Puckett cases involve statements made by each of them as civil service employees at the base, at the request of and directed to the chairman of the grievance committee. Each statement was delivered to other base personnel in sealed envelopes for delivery to the committee. The

Goins, Taylor and Puckett cases additionally involve statements by these employees respectively given to an investigator for the Civil Service Commission, a naval personnel director, and Industrial Relations Officer Juergens, all of whom were authorized to investigate the Preble matter. The Juergens case concerns a statement by him as a civil service employee to another authorized civil service investigator at the investigator's request. The Horne case involves statements by him as a naval enlisted serviceman stationed at the base to other civil service investigators upon their request. The Parrish case involves a memorandum by him as the base commanding officer, giving Preble notice of his disemployment, and there is no allegation of the manner of its publication.

▮ The trial court denied relief in each case because of an absolute privilege, based on identical findings that each allegedly libelous statement was in fact made " * * * in the course of and within the scope of his (each defendant's) official duties." Appellant's first contention is that as a matter of law, the statements were not made in scope of duty so as to give rise to an absolute privilege, and furthermore, the grievance proceeding being procedurally defective, persons participating in it were not thereby protected as in line of duty.

▮ Federal law determines these issues because the privilege involved is that of federal officers or employees "acting in the course of their duties." Howard v. Lyons, 360 U.S. 593, 597, 79 S. Ct. 1331, 1333, 3 L.Ed.2d 1454. And it seems fairly plain that the federal law now is that statements are absolutely privileged if made " * * * within the outer perimeter of * * * line of duty * * *." Barr v. Matteo, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434; and see also Mr. Justice Black's concurring opinion, 360 U.S. 576, 79 S.Ct. 1342. In gauging privilege within this perimeter, the Supreme Court expressly rejected a rigid scope of duty, as literally prescribed by rule or regulation, in favor of a more generalized concept of line of duty. Barr v. Matteo, supra, 360 U.S. at pages 574–575, 577–578, 79 S.Ct. at pages 1341, 1342–1343. (Black concurring). Thus, statements which are neither strictly authorized by, nor in furtherance of, some rule or regulation may nevertheless be in line of official duty, hence privileged, if they are deemed appropriate to the exercise of the utterer's office or station. This concept of line of duty is of course vulnerable to the charge that it prescribes no rule of conduct by which a " * * * government employee can tell with any certainty whether he will receive absolute immunity for his acts." Barr v. Matteo, supra, 360 U.S. at page 578, 79 S.Ct. at page 1343 (The Chief Justice dissenting). But it appears to be as close as we can come to the delicate balance between the protection of individual citizens against irresponsible conduct and that freedom of official action so essential to the right of the people " * * * to applaud or to criticize the way public employees do their jobs, from the least to the most important." Barr v. Matteo, supra, 360 U.S. at page 577, 79 S.Ct. at page 1342 (Black concurring).

But in our cases, we are not called upon to probe the outer limits of this nebulous perimeter so recently and authoritatively drawn for us. Surely these federal servants had a clear duty to report to proper authorities causes of disruption in the services they perform, or affecting such services, at the peril of being indifferent if not derelict in their responsibilities. Moreover, with one exception, viz., Parrish, the utterances were made internally in response to inquiries that on their face were manifestly proper.[1] And assuredly the privilege of these employees does not turn upon whether they independently and accurately ascertained the technical correctness of the grievance proceeding. With reference to Parrish, whose privilege is most strenuously chal-

1. Cf. Barr v. Matteo, supra, 360 U.S. at pages 582–584, 79 S.Ct. at pages 1345–1346 (The Chief Justice dissenting).

lenged, he acted pursuant to a positive mandate of the law.[2] And even if his acts did not accord with prescribed formalities, we cannot believe he was acting outside his appropriate authority in reducing to writing his reasons for Preble's discharge. It follows that on the facts stated, the accused utterances in each case were well within "the outer perimeter" of the utterer's line of duty, and therefore the trial court was correct in holding them absolutely privileged.

But conceding the correctness of the trial court's conclusions based upon the stated facts, appellant contends that the facts of record dealing with the respective scopes of duty were controverted, and that the cases were therefore not ripe for summary judgment. This contention must rest squarely upon appellant's affidavits, which are all of his own making, for the several depositions clearly present no such conflict. Certainly appellees' affidavits assert facts showing that the statements were absolutely privileged as being made in the line of duty. They therefore foreclose any genuine issue of fact unless Preble's opposing affidavits affirmatively show that he is competent to testify that the statements were not made in line of duty. See Alaniz v. United States, 10 Cir., 257 F.2d 108; 6 Moore, Federal Practice § 56.22 (2d Ed.).

The bulk of the averments in all of Preble's affidavits, as the trial court found, do no more than assert by way of conclusion "that the controverted statements and publications were not given pursuant to defendant's official duties * * * and contains no allegation of fact or facts within the plaintiff's personal knowledge." Controverted issues of fact are not thus raised. Moreover, we have answered many of these asser-tions in our discussion of the applicable scope of duty.

And we have considered the specific assertion that the accused statements of Johnson, Goins, Taylor and Puckett were not in line of duty because not solicited by the grievance committee. To factually substantiate this conclusion, Preble appended an excerpt from the committee proceedings. However, upon inspection, this excerpt shows that the committee was in fact receptive toward statements of such further witnesses as either side might wish to offer, and this is certainly not contrary to appellees' averments that the statements were in fact solicited. We have further examined the record at appellant's invitation to see if these employees' statements included matter not germane to the items of Preble's grievance and were therefore outside of line of duty. And, we have found that one of Preble's stated points of grievance was a "request that the charge of 'Incompatibility' be removed from my personnel records as such charges have not been substantiated", and certainly all the accused statements were directed to this. We have examined the Juergens statement in view of the specific contention that the record shows it to be violative of applicable regulation in that it was more than purely advisory. And, we found that the statement was no more than a compilation of available data relative to Preble's performance with the express purpose of providing information to "assist any person or persons trying to adjudicate this case based on its merits and facts."

And so we conclude that none of Preble's affidavits indicate any competency on his part to testify to any material facts which would throw doubt on the trial court's findings. Clearly no genuine issue of material fact is raised, and the summary judgments are affirmed.

2. Section 45, Navy Civilian Personnel Instruction, promulgated by the Secretary of the Navy pursuant to 5 U.S.C.A. § 22.