Clifford COLEMAN, Jr.,
Plaintiff–Appellee,

v.

UNITED STATES of America and Angela Pinion, Defendants–Appellants.

No. 95–5916.

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted June 6, 1996.

Decided Aug. 5, 1996.

John D. Hays, Stephen L. Hogg (briefed), Stratton, May & Hays, Pikeville, KY, for Plaintiff–Appellee.

Dell W. Littrell, Asst. U.S. Atty., Office of the U.S. Atty., Lexington, KY, Barbara L. Herwig, U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, DC, John F. Daly (argued and briefed), U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, DC, for U.S.

Dell W. Littrell, Asst. U.S. Atty., Office of the U.S. Atty., Lexington, KY, Barbara L. Herwig, U.S. Dept. of Justice,, Appellate Staff, Civ. Div., Washington, DC, C. Tom Anderson, Pafunda & Anderson, Pikeville, KY, John F. Daly, U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, DC, for Angela Pinion.

Joseph L. White, White, Conway & Adams (briefed), Louisville, KY, for amicus curiae.

Before: KENNEDY and NORRIS, Circuit Judges; MATIA, District Judge.*

MATIA, District Judge.

This malicious prosecution action was initially filed in Kentucky state court by the plaintiff-appellee herein, Clifford Coleman, Jr. The named defendant in that action was Angela Pinion, co-defendant-appellant along with the United States in the case under review. Acting under the authority of the Attorney General and pursuant to 28 U.S.C. § 2679(d)(2), the United States Attorney for the Eastern District of Kentucky then issued a certification indicating that Pinion was acting within the scope of her employment as a United States Postal Service ("USPS") employee when she filed the criminal complaint against Coleman that gave rise to the instant malicious prosecution litigation.[1] Following the scope certification, the United States was substituted for Pinion as the party defendant, and this action was removed to the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 2679(d)(2).

The District Court subsequently granted Coleman's motion to reinstate Pinion as the party defendant, effectively overruling the Attorney General's scope certification. The court reasoned that because Pinion was neither contractually nor impliedly required to file the criminal complaint against Coleman, she was not acting within the scope of her employment in doing so. The District Court also denied the Government's motion to dismiss and remanded the case to state court.[2]

The appellants now contend that the District Court erred in holding that Pinion was acting outside the scope of her employment when she filed her criminal complaint against Coleman. They argue that the United States should therefore be resubstituted as the party defendant and that the case should then be dismissed on grounds of sovereign immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b).[3] For the reasons set forth below, we find that Pinion acted within the scope of her employment, and accordingly REVERSE the decision of the District Court.

## I. Facts

Prior to the events that gave rise to this lawsuit, both Coleman and Pinion were employees of the USPS in Pikesville, Kentucky. Pinion was an accounting technician and Coleman was her supervisor. Following the investigation of complaints by other employees, Coleman was reprimanded in April of 1992 for poor performance as a supervisor, verbal abuse of employees, and use of unduly authoritarian methods of supervision. After Coleman appealed his reprimand, a number of female employees including Pinion came forward with allegations of sexual harassment and physical assault against him. Concluding that these latter allegations were fully supported, postal authorities ordered Coleman's transfer and demotion. Coleman appealed this decision, and a hearing was

---

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Pinion's criminal complaint against Coleman was filed in the Pike County District Court in Kentucky.

2. The decision to remand this case to state court was a consequence of the District Court's finding that Pinion was acting outside the scope of her employment and that she and not the United States was therefore the proper party defendant. We note that a split of authority exists among the circuits concerning the propriety of remand when a district court finds that the Attorney General's scope certification is incorrect and resubstitutes the originally named defendant. The decisions favoring remand include *Nasuti v. Scannell*, 906 F.2d 802, 814 n. 17 (1st Cir.1990) and *Haddon v. United States*, 68 F.3d 1420, 1426

(D.C.Cir.1995). *Garcia v. United States*, 88 F.3d 318 (5th Cir.1996), and *Aliota v. Graham*, 984 F.2d 1350, 1356 (3d Cir.), *cert. denied*, 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), however, reach the contrary result. We note further that this Circuit has not ruled on the issue. *See Arbour v. Jenkins*, 903 F.2d 416, 421 n. 3 (6th Cir.1990). However, in view of our disposition of the case, we do not reach the question of whether the District Court's remand decision was correct in the context it was reached.

3. Although the plaintiff conceded below that his case would be barred by the FTCA if the United States were found to be the proper party defendant, we will remand this case to the District Court so that it may rule on that point in light of our holding today.

scheduled. Pinion maintained that Coleman contacted her prior to the hearing in an effort to learn the substance of her testimony, and in the process offered her a bribe to change her version of the events under investigation. After a postal official informed Coleman that Pinion would testify about the bribery attempt, Coleman withdrew his appeal. A subsequent attempt by Coleman to reopen the proceedings was unsuccessful.

Following the dismissal of Coleman's appeal, he was seen driving repeatedly back and forth in front of the post office where Pinion worked in an apparent effort to intercept her upon her departure. Pinion avoided Coleman for some time, but eventually encountered him when she was leaving work on December 8, 1992. Pinion alleged that Coleman followed her in his car, attempted to induce her to pull over, and at one point struck her car with his. After the confrontation ended and she returned home, Pinion telephoned the Superintendent of Postal Operations to report the incident. Upon discussion of the matter the next morning, a postal inspector requested that Pinion file criminal charges against Coleman. Pinion did so, accompanied by postal officials, and a warrant was issued for Coleman's arrest. As a condition of his release from police custody, Coleman was forbidden to have any contact with either Pinion or any other postal employee.

Coleman was subsequently acquitted by a jury on charges of second degree wanton endangerment and second degree stalking. However, after determining that Coleman's conduct posed a danger to his fellow employees, the postal service placed him on off-duty, non-pay status and eventually terminated his employment. On appeal from this action, a labor arbitrator ruled that Pinion's allegations were amply corroborated and that Coleman's explanations were not credible. Thereafter, Coleman filed the instant malicious prosecution suit against Pinion.

## II. Jurisdiction

■ The order resubstituting Pinion in place of the United States as party defendant is a final decision of a district court, reviewable pursuant to 28 U.S.C. § 1291. *Kimbro v. Velten,* 30 F.3d 1501, 1503 (D.C.Cir.1994),

*cert. denied,* —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995); *Jamison v. Wiley,* 14 F.3d 222, 230 (4th Cir.1994); *Aliota v. Graham,* 984 F.2d 1350, 1353 (3d Cir.), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993); *Mitchell v. Carlson,* 896 F.2d 128, 133 (5th Cir.1990).

## III. Discussion

■ Section 2679(d)(2) of Title 28 of the United States Code provides that:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. . . .

Although the Attorney General's certification provides *prima facie* evidence that an employee's conduct is within the scope of employment, *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1143 (6th Cir.1996), it "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." *Gutierrez de Martinez v. Lamagno,* —— U.S. ——, ——, 115 S.Ct. 2227, 2236, 132 L.Ed.2d 375 (1995). The Attorney General's certification is instead reviewable first by the district court, *id.,* and then on the appellate level as a question of law under a *de novo* standard. *See Forrest City Mach. Works, Inc. v. United States,* 953 F.2d 1086, 1088 n. 4 (8th Cir.1992).

■ Because the scope of employment issue is governed by the law of the state in which the conduct at issue occurred, 28 U.S.C. § 1346(b); *RMI Titanium Co.,* 78 F.3d at 1143, Kentucky law governs that question in this case. To determine whether

a particular employee action is within the scope of employment, Kentucky courts consider the following: (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties. *Flechsig v. United States,* 991 F.2d 300, 303 (6th Cir.1993); *Frederick v. Collins,* 378 S.W.2d 617, 619 (Ky.Ct.App.1964); *Wood v. Southeastern Greyhound Lines,* 302 Ky. 110, 194 S.W.2d 81, 83 (1946). We examine each of these factors as they apply to the circumstances of the instant case.

### A. Whether Pinion's conduct was similar to that which she was hired to perform

■ This Court has recognized that the duties of an employee include those that he or she is "expressly or impliedly" hired to perform. *Marcum v. United States,* 324 F.2d 787, 790 (6th Cir.1963). Kentucky courts have likewise found that actions "reasonably incident" to an employee's more typical duties are within the scope of employment. *Flechsig,* 991 F.2d at 303 (quoting *John v. Lococo,* 256 Ky. 607, 76 S.W.2d 897, 898 (1934)). Whether the filing of Pinion's complaint was the type of act she was employed to perform is not therefore a question that can be answered simply by observing that as an accounting technician, it was not part of her normal routine to file criminal charges. Instead, we must examine Pinion's responsibilities as a postal worker holistically to determine whether they would reasonably include the type of activity at issue.

We begin with the proposition that if Pinion had filed an internal grievance as an actual step in an ongoing disciplinary proceeding, her conduct would have fallen within the scope of employment. This rule, established by the Tenth Circuit in *Preble v. Johnson,* 275 F.2d 275, 278 (10th Cir.1960), has been accepted by numerous courts considering the issue. *See, e.g., Ruderer v. Meyer,* 413 F.2d 175, 180 (8th Cir.), *cert. denied,* 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969); *Pagano v. Martin,* 397 F.2d 620, 620 (4th Cir.1968), *cert. denied,* 393 U.S. 1022, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969); *West v. Garrett,* 392 F.2d 543, 544 (5th Cir.1968); *Molever v. Lindsey,* 289 F.Supp. 832, 834–35 (E.D.Mich.1968), *aff'd,* 411 F.2d 597 (6th Cir. 1969). *Preble* involved a number of libel suits brought by the plaintiff, a former naval employee, in response to which the defendants, other personnel at the base, claimed governmental immunity arising from conduct in the scope of employment or "line of duty." 275 F.2d at 278. Noting that the Supreme Court has established a flexible test for establishing the line of duty in governmental immunity cases, and that this line must be set at the "outer perimeter" of the employee's responsibilities, *see Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959), the *Preble* court wrote: "Surely these federal servants had a clear duty to report to proper authorities causes of disruption in the services they perform, or affecting such services, at the peril of being indifferent if not derelict in their responsibilities." 275 F.2d at 278. Coleman had become just such a "cause of disruption" with his pattern of abuse and harassment of numerous postal employees, and Pinion would have risked being "indifferent if not derelict" in her responsibilities as a postal employee unless she took action.

The most obvious difference between the *Preble* line of cases and the situation presented by the instant appeal is that Pinion's complaint was technically separate from the internal disciplinary proceeding. In that sense, her action was arguably less a part of her job responsibilities. However, we do not believe that this distinction is sufficient to dictate a different result.

The underlying rationale in *Preble*—that the activities were within the scope of employment because they contributed to the effective management of the employer's operation—is equally applicable here. Pinion's criminal complaint was a logical continuation of the recently concluded postal disciplinary proceedings. Postal authorities requested that Coleman file the complaint. Although this was a request and not an order from her

employer,[4] it certainly suggests an intention on the part of the postal service to bring the filing into the realm of Pinion's job-related conduct. *See People's Serv. Station, Inc. v. Purvis*, 379 S.W.2d 222, 223 (Ky.Ct.App. 1964) (holding that employee's compliance with employer's instructions brought employee's death incurred in connection with the execution of those instructions within the scope of his employment for purposes of workers' compensation).

In her complaint, Pinion refers to Coleman's ongoing history of harassing postal employees besides Pinion. The terms of Coleman's release from police custody on the day after his encounter with Pinion included an order prohibiting Coleman from coming into contact with any postal employee, not just Pinion. By facilitating the defusion of a turbulent and potentially dangerous situation, Pinion's criminal complaint provided a significant benefit to her employer. The integrity of the USPS disciplinary proceedings involved in this case, as well as those that may evolve in the future, was protected.

Each of these elements suggests a strong connection between Pinion's action and her implicit responsibilities as a USPS employee. The fact that Pinion's criminal complaint was an indirect rather than a direct outgrowth of the postal disciplinary proceedings is not therefore sufficient to remove Pinion's conduct from the scope of her employment.

Accordingly, we find that Pinion's conduct was reasonably incident to her postal employment.

### B. Whether the action occurred substantially within the authorized spacial and temporal limits of the employment

■ Pinion filed her complaint during normal business hours, thereby satisfying the temporal requirement. As to the spacial aspect of this factor, the Pike County Courthouse was the only location at which filing was possible. Because postal supervisors explicitly authorized Pinion to file her criminal complaint at the Pike County Courthouse,

that location was by definition within the "authorized" spacial limits of employment under these circumstances. We therefore find that Pinion's conduct was substantially within the spacial and temporal parameters of her employment.

### C. Whether Pinion's conduct was in furtherance of postal service business

■ As discussed in section III.A, *supra,* Pinion's complaint was a logical continuation of USPS internal disciplinary proceedings. The nexus between Coleman's conduct that led to the disciplinary proceedings against him and that which formed the basis of Pinion's criminal complaint is simply too close to ignore. As such, the same USPS interests that were furthered by the disciplinary proceedings themselves were furthered by Pinion's complaint. The integrity of the USPS disciplinary process was protected. The security of USPS workers who had previously been harassed by Coleman, as well as that of any potential future targets, was protected. Not only would this have been important for the USPS as an end in itself, but it is beyond cavil that an atmosphere free from sexual harassment and physical assault is conducive to a constructive working environment. This is true of objectionable conduct occurring in transit to, during, or while returning home from work. In fact, Coleman had previously been warned by written notice that his harassing conduct was "severely detrimental to *the efficiency of the service.*"

That the USPS derived a benefit from Pinion's complaint is further suggested by the fact that postal officials requested the filing and accompanied Pinion to the courthouse. It is reasonable to conclude that a work environment is enhanced when an employer such as the USPS appears and acts in a sensitive and supportive manner when faced with the problems of its employees.

Reinforcing our conclusion on this point is the insistence of Kentucky courts that the employee conduct in question need only be done *in part* to benefit the employer. *See Flechsig*, 991 F.2d at 303; *Christian v. Unit-*

---

4. A direct order from the USPS would likely have obviated the need for any examination into whether Pinion's conduct was within the scope of employment under these circumstances.

*ed States,* 184 F.2d 523, 525 (6th Cir.1950) ("To exonerate the master from liability, it is essential that deviation or departure by the servant from his master's business was for purposes *entirely* personal to the servant." (emphasis added)). Therefore, even if Pinion's motivation was in part personal, this factor is still satisfied by the substantial benefits derived by the USPS.

### D. Whether the conduct, though unauthorized, was expectable in view of the employee's duties

To the extent that this factor requires an examination of Pinion's actions vis-a-vis the duties for which she was employed, it effectively merges with the inquiry undertaken by section III.A, *supra.* As to whether her actions were in fact expectable by the USPS at the time she acted, it is clear that her actions were expectable in that postal officials both suggested that she file the complaint and accompanied her when she did so. Therefore, this factor also supports a finding that Pinion's actions were within the scope of her employment.

## IV. Conclusion

For the foregoing reasons, the decision of the District Court resubstituting Angela Pinion as defendant is reversed. The order, docketed May 22, 1995, remanding the action to Pike County Circuit Court is vacated; the action is remanded to the District Court for further proceedings not inconsistent with this opinion.