**Jarmilia BOOKER, Plaintiff,**

**v.**

**GTE.NET LLC d/b/a Verizon Internet Solutions, et al., Defendants.**

**No. Civ.A. 02–9–JMH.**

United States District Court,
E.D. Kentucky,
At Frankfort.

Aug. 22, 2002.

Willie E. Peale, Jr., Frankfort, KY, for plaintiff.

Willian E. Johnson, David J. Guarnieri, Johnson, Judy, True & Guarnieri, Frankfort, KY, James G. Richmond, Kevin D. Finger, Ungaretti & Harris, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on motion by defendant GTE.net, LLC, d/b/a Verizon Internet Solutions ("Verizon"), to dismiss plaintiff's complaint and amended complaint [Record Nos. 6 & 20]; by plaintiff for leave to join an indispensable party [Record No. 23]; and by plaintiff to supplement plaintiff's memorandum in opposition to defendant's motion to dismiss [Record No. 25]. Each motion is ripe for review.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a career employee in the Office of the Attorney General for the Commonwealth of Kentucky. On February 8, 2001 plaintiff received a letter from her supervisors. The letter directed her to explain a certain e-mail ostensibly sent from plaintiff's personal e-mail account and received by a current or prospective Verizon client residing in Washington State. The e-mail, as even Verizon concedes, was "rude and critical of the recipient,"—specifically, the e-mail refers to the recipient variously as "pathetic," "grumpy," and "horrible," and at one point asks rhetorically why the recipient doesn't just "put on [his] pampers and ask for [his] bobba."[1] The February 8 letter, authored by Administrative Services Director John Cubine, requested that she produce all correspondence and any other materials relating to the e-mail in question. Plaintiff was also asked to explain why she used her personal e-mail account—as opposed to her employment account—to respond to the customer complaint of the Verizon customer.

---

1. The e-mail, addressed to a disgruntled Verizon customer, reads in full as follows:

I would just like to take a moment and tell you how disgusted I am that someone would waste so much time over INTERNET ACCESS! You sir are pathetic and I would greatly appreciate it if you would take me OFF of your ridiculous email list! If you are having this much trouble getting INTERNET ACCESS, then go through another company. This is not a difficult thing to understand. The whole reason we de-regulate such things is to give you, the customer, the opportunity for more selection.

I sympathize with you over your troubles, but come on [Verizon customer], why don't you put on your pampers and ask for your bobba OR cancel the service altogether! Your repeated emails lambasting people for doing the job for which they were trained to do is baseless and petty. You sir are a grumpy, horrible man who needs to grow up and realize that you are on earth, not some crazy place where everything works out for [Verizon customer] and company!

Frankly, I hope you NEVER get this internet service and sit on perpetual hold, waiting for a "live" human to answer the phone.

[Verizon customer], if you want to waste precious time spreading libel around about verizon, which by the way is illegal, then that is your business. Please stop sending me these despicable emails at once!!

Sincerely,

[plaintiff]

Plaintiff met with her supervisors and explained that she had not sent the e-mail, had no knowledge of the e-mail (previous to receiving her supervisors' letter asking her to explain), and in fact did not possess the personal account from which the e-mail was sent. Plaintiff's ignorance of the e-mail and consequent innocent were revealed in the course of the ensuing investigation, and plaintiff was formally exonerated by letter dated May 11, 2001.

Citing traumatic, emotional, and psychological injuries, plaintiff subsequently filed this action. In addition to suing the Verizon employees responsible for creating the fake e-mail address and sending the offensive e-mail, plaintiff sued their employer, Verizon, under a vicarious liability/respondeat superior theory.

Though plaintiff's pleadings are far from clear—or, for that matter, consistent—defendants have perceived in plaintiffs' alleged facts generally five (5) causes of action. The Court finds this determination accurate. The five claims are as follows: (1) violation of Washington state statutes 19.190.020 [2] and 19.190.030,[3] (2) failure to supervise, (3) intentional infliction of emotional distress ("outrage"), (4) civil conspiracy, and (5) defamation/libel. Plaintiff's amended complaint includes a sixth count, but this claim merely re-alleges the same statutory violations as contained in count (1). In essence, then, plaintiff brings five counts.[4]

---

2. The statute reads as follows:
Unsolicited or misleading electronic mail—Prohibition
(1) No person, corporation, partnership, or association may initiate the transmission of a commercial electronic mail message *from a computer located in Washington* to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that:
(a) Uses a third party's internet domain name without permission of the third party, or otherwise misrepresents any information in identifying the point of origin or the transmission path of a commercial electronic message, or
(B) Contains false or misleading information in the subject line.
. . .
Wash.Stat. 19.190.020 (emphasis added).

3. Unsolicited of misleading electronic mail—Violation of consumer protection act
(1) It is a violation of the consumer protection act . . . to initiate the transmission of a commercial electronic mail message that:
(a) Uses a third party's internet domain name without permission of the third party, or otherwise represents any information in identifying the point of origin or the transmission of a commercial electronic mail message; or
(B) Contains false or misleading information in the subject line.
Wash.Stat. 19.190.030.

4. Judging from her response to Verizon's motion to dismiss, plaintiff might dispute the Court's interpretation of her complaint. Specifically, plaintiff claims to have pleaded a RICO claim. She most certainly has not, however, and it would be patently unfair and prejudicial to defendants to permit plaintiff to "back-door" such a claim.

The RICO claim shall not be discussed at length for several reasons. First, and most significantly, the RICO claim was not properly pleaded. Mere reference to the RICO statute in plaintiff's statement of jurisdiction and venue falls far short of giving defendants fair notice. No matter how liberal federal pleading standards, a defendant—much less a Court—should not be forced to undergo a taxing analysis to determine whether a certain claim has or has not been pleaded. Second, even if properly pleaded, the claim is wholly without merit. Specifically, plaintiff—in failing to allege more than one predicate act—has failed to satisfy the statute's "pattern of racketeering activity" requirement, *see* 18 U.S.C.1961(5); *Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620, 621 (6th Cir.2001), and has also failed to allege injury to her business or property (to be distinguished from personal injuries). *Drake v. B.F. Goodrich, Co.*, 782 F.2d 638 (6th Cir.1986).

## DISCUSSION

Plaintiff's five claims are of three varieties. First, three of plaintiff's claims against Verizon are vicarious claims, premised on the legal doctrine of respondeat superior. These claims are: (1) intentional infliction of emotional distress, (2) civil conspiracy, and (3) defamation/libel. Because these claims are of a vicarious nature, it is not necessary that plaintiff show any fault on the part of Verizon. Verizon's liability as to these claims is derivative; accordingly, plaintiff need only focus on the individual employees' conduct. By stark contrast, plaintiff's negligent supervision claim is not a vicarious claim, and thus requires proof of fault on the part of Verizon. Finally, plaintiff's allegations of statutory violations by their very nature pertain not simply to the culpable individual employees but to Verizon itself. Because these three types of claims require different legal analyses, the Court address them individually.

### A. Respondeat Superior Claims

■ Respecting plaintiff's intentional infliction of emotional distress, civil conspiracy, and defamation/libel claims, an initial, threshold question arises: assuming that plaintiff has stated proper claims against the individual tortfeasors (the culpable Verizon employees), can Verizon be held vicariously liable for their actions? The answer to this pivotal question, of course, turns on yet another: were the tortious acts performed in the "scope of employment?" *Osborne v. Payne*, 31 S.W.3d 911 (Ky.2000). For reasons considered below, in the context of the instant case this normally straightforward inquiry is not so straightforward.

■ The complexity of the "scope of employment" inquiry in the instant case comes about because the three (3) claims referenced above are not simple negligence, but rather intentional tort claims. While it is quite true that, as a general rule, intentional torts are deemed to fall outside the scope of employment, *Am. Gen. Life and Accident Ins. Co. v. Hall*, 74 S.W.3d 688 (Ky.2002), this rule is far from categorical. One might recall, for example, the classic law school hypothetical positing the bar bouncer who injures a patron by using excessive force in removing him from the bar; the law has long recognized that in such an instance the bar owner may be held vicariously liable for the bouncer's actions, the intentional nature of the bouncer's actions notwithstanding. The justification commonly advanced in support of this result is that some intentionally tortious employee acts are so closely related to the nature of the employment that no real distinction can be made for purposes of determining liability.

The United States Court of Appeals for the Sixth Circuit most recently—and comprehensively—addressed the question of defining (under Kentucky law) "scope of employment" in *Coleman v. United States*, 91 F.3d 820 (6th Cir.1996). In holding that the act of filing an employee complaint (later alleged to be an example of malicious prosecution, an intentional tort) fell within a postal employee's scope of employment, the Court of Appeals made the following observation:

> To determine whether a particular employee action is within the scope of employment, Kentucky courts consider the following: (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties.

*Id.* at 823–24 (citations omitted). Based on a thorough survey of the relevant case law, the Sixth Circuit's four-factor test is an excellent analytical tool. The Court in the instant case therefore endeavors to apply it.

First, then, the Court assess "whether the conduct was similar to that which the employee was hired to perform." In the instant case, the offending employees were employed to address customer service complaints submitted by Verizon customers. While they were certainly not employed—nor authorized—to respond to customer complaints by sending crass e-mails from fraudulently-established e-mail accounts, they *were* employed to respond to such complaints. In other words, the offending employees were employed to do what they did, just not in the manner that they did it. Considered in context, this factor is not very helpful in resolving the scope of employment question.

The Court next inquires "whether the action[s] occurred substantially within the authorized spacial and temporal limits of the employment." As to this factor, there can be no doubt: the acts in question were committed on the job and at the workplace.

The third factor requires that the Court consider "whether the action was in furtherance of the employer's business." A close look at the text of the offending e-mail reveals that the e-mail was most certainly *not* sent in furtherance of Verizon's business. Indeed, the e-mail encourages the recipient to switch from Verizon to a different service. The Court is confident in it's conclusion that the e-mail may not be said to have been sent in furtherance of Verizon's business.

Finally, the Court considers the final factor: "whether the conduct, though unauthorized, was expectable in view of the employee's duties." This is a very nebulous, seemingly standardless standard. As

difficult as this factor is to apply, it must be conceded that creating false third-party e-mail accounts and sending intentionally-offensive e-mails is not expected from company employees. It is particularly unexpected of customer service representatives. Consequently, the Court concludes that this factor supports Verizon's argument that its employees' acts were outside their scope of employment.

Weighing the four (4) factors as outlined in *Coleman,* the Court finds that the Verizon employees acted outside their scope of employment—as that term of art is defined under Kentucky law. It is a close call, and plaintiff's claim to the contrary cannot be dismissed out of hand, but in the final analysis the scales tip in favor of Verizon.

The Court's conclusion is buttressed by the most recent Kentucky case addressing the "scope of employment" issue, *Osborne v. Payne,* 31 S.W.3d 911 (Ky.2000). In *Osborne,* the Kentucky Supreme Court held that a Catholic diocese could not be held liable for alleged inappropriate conduct on the part of a diocesan priest. Specifically, the priest was alleged to have abused his status as marriage counselor in carrying on adulterous relations with a parishioner. Wrote the Kentucky Supreme Court, in determining that the priest's actions fell outside his scope of employment: "Certainly, the scope of employment of a priest could include marriage counseling, but it clearly does not include adultery." Likewise, in the instant action, the scope of employment of a Verizon employee could include responding to customer complaints, but it clearly does not include creating fraudulent e-mail accounts and sending offensive e-mails.

### B. Plaintiff's Claim for Negligent Supervision

As indicated earlier, plaintiff's claim for negligent supervision is not a

derivative claim. In other words, in asserting this claim plaintiff does not attempt to impute liability for tortious actions on the part of Verizon employees to Verizon itself, but rather blames the company directly for failing to supervise.

An extended analysis of this claim is unnecessary, however, as plaintiff's negligent supervision claim is tragically flawed. Specifically, though plaintiff alleges that Verizon owes a legal duty to supervise its employees, she does *not* allege that Verizon knew or should have known that the offending employees would act as they did. Absent such a allegation, plaintiff has failed to state a claim.

### C. Plaintiff's Statutory Claims

 Here, too, plaintiff's claims must fail as a matter of law. The statutes under which plaintiff sues apply only to "commercial electronic mail messages"—defined in Wash.Stat. 19.190.020(1) as "an electronic mail message sent for the purpose of promoting real property, goods, or services for sale or lease." The e-mail sent by Verizon's employees from plaintiff's false account, however, had neither the intent nor effect of "promoting" Verizons's business. As stated earlier, the e-mail actually encouraged the recipient to cancel Verizon service.

### CONCLUSION

Plaintiff cannot hold Verizon vicariously liable for the tortious acts of its employees because those acts fell outside the employees' scope of employment. Also, plaintiff has failed to make out a proper claim for negligent supervision. Finally, plaintiff's statutory claims are—by definition—inapplicable.[5]

---

5. The Court finds it unnecessary to consider at length plaintiff's motion to join an indispensable party. It is clear that full relief can be granted in the party's absence, and the

Accordingly,

**IT IS ORDERED**

(1) That Verizon's motion to dismiss plaintiff's complaint [Record No. 6] and amended complaint [Record No. 20] be, and the same hereby are, **GRANTED;**

(2) That defendant Verizon be, and the same hereby is, **DISMISSED** from this action;

(3) That plaintiff's motion to join an indispensable party [Record No. 23] be, and the same hereby is, **DENIED;** and

(4) That plaintiff's motion to supplement plaintiff's memorandum in opposition to Verizon's motion to dismiss be, and the same hereby is, **GRANTED.**

instant litigation shall have absolutely no prejudicial effect on the ability of the alleged indispensable party to seek relief.