*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0427P (6th Cir.)
File Name: 03a0427p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JARMILIA BOOKER,
 *Plaintiff-Appellant,*

 *v.*

 No. 02-6190

GTE.NET LLC, et al.,
 *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 02-00009—Joseph M. Hood, District Judge.

Argued: September 30, 2003

Decided and Filed: December 5, 2003

Before: MERRITT, MARTIN, and DAUGHTREY, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Willie E. Peale, Jr., PEALE LAW OFFICE,
Frankfort, Kentucky, for Appellant. Kevin D. Finger,
GREENBERG & TRAURIG, Chicago, Illinois, for
Appellees. **ON BRIEF:** Willie E. Peale, Jr., PEALE LAW
OFFICE, Frankfort, Kentucky, for Appellant. Kevin D.

Finger, GREENBERG & TRAURIG, Chicago, Illinois, for
Appellees.

———————————

**OPINION**

———————————

 BOYCE F. MARTIN, JR., Circuit Judge. Jarmilia Booker
appeals the district court's decision to dismiss her complaint
with prejudice pursuant to Federal Rule of Civil Procedure
12(b)(6). Concluding that her claims are without merit, we
AFFIRM the district court's dismissal.

I.

 On February 8, 2001, Booker, a long-time employee of the
Office of the Attorney General for the Commonwealth of
Kentucky, received a letter from her supervisor. The letter
demanded an explanation for an electronic message that
Booker apparently authored and sent from a personal account
bearing Booker's name.[1] As the district court noted, the

—————————

[1]The text of the electronic message stated:

 [Verizon customer],
  I would just like to take a moment and tell you how
 disgusted I am that someone would waste so much time
 over INTERNET ACCESS! You sir are pathetic and I
 would greatly appreciate it if you would take me OFF
 of your ridiculous email list! If you are having this
 much trouble getting INTERNET ACCESS, then go
 through another company. This is not a difficult thing
 to understand. The whole reason we de-regulate such
 things is to give you, the customer, the opportunity for
 more selection.
  I sympathize with you over your troubles, but come
 on [Verizon customer], why don't you put on your
 pampers and ask for your bobba OR cancel the service
 altogether! Your repeated emails lambasting people for
 doing the job for which they were trained to do is

electronic message's tone was "rude and critical of the recipient." Apparently the message was transmitted in reaction to the recipient's numerous complaints about his internet service that he had forwarded to–among others–the Office of the Attorney General for the Commonwealth of Kentucky

An investigation of the origins of the offensive electronic message uncovered that a Verizon employee, not Booker, authored the message. Thus, no disciplinary action was taken against Booker. Booker, however, claims that she was traumatized by the entire incident and suffered emotional and psychological injuries, which prompted her to file a complaint with the district court. The complaint filed against GTE.net, doing business as Verizon Internet Solutions, alleged violations of the Racketeering Influenced and Corrupt Organizations Act and Washington state statute 19.190.020 and 19.190.030, as well as claims for failure to supervise, intentional infliction of emotional distress, civil conspiracy and libel. The district court dismissed all of her claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

baseless and petty. You sir are a grumpy, horrible man who needs to grow up and realize that you are on earth, not some crazy place where everything works out for [Verizon customer] and company!

Frankly, I hope you NEVER get this internet service and sit on perpetual hold, waiting for a "live" human to answer the phone.

[Verizon Customer], if you want to waste precious time spreading libel around about Verizon, which by the way is illegal, then that is your business. Please stop sending me these despicable emails at once!!

Sincerely,

Mrs. Booker

Booker filed this timely appeal challenging the district court's dismissal of her vicarious liability and negligent supervision claims. On appeal, it is unclear whether Booker has challenged the district court's dismissal of her Racketeering Act and Washington state statutory claims. Regardless, we find that Booker has waived her right to appeal the dismissal of these claims because she has failed to provide any legal argument to demonstrate that the district court erred in its dismissal of these claims. *See Ewolski v. City of Brunswick*, 287 F.3d 492, 516-17 (6th Cir. 2002) (noting that a failure to provide a legal argument on an issue in a brief presented to this Court is considered a waiver of appeal of that issue).

II.

This Court reviews *de novo* a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

A.

Kentucky law recognizes that an employer can be held liable for the negligent supervision of its employees. *See Smith v. Isaacs*, 777 S.W.2d 912 (Ky. 1989). In recognizing the tort of negligent supervision, Kentucky has adopted the Restatement (Second) of Agency § 213 which illustrates the requirements for establishing a claim of negligent supervision. *Id.* at 914. As the commentary and illustrations following the Restatement clarify, an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created. *See* RESTATEMENT (SECOND) OF AGENCY § 213 (1958) (Comment & Illustrations).

In this case, Booker's amended complaint is devoid of "either direct or inferential allegations with respect to all material elements necessary," *Greenberg*, 177 F.3d at 515, to

recover under the theory of negligent supervision. Specifically, Booker's complaint failed to allege that Verizon knew or should have known that the employee who drafted the electronic message would act as he or she did. While Booker alleged that Verizon had a duty to supervise its employees and that it failed to satisfy this duty, this Court is not bound to accept bare legal conclusions unsupported by factual allegations. *See In re Sofamore Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) ("Nevertheless, our standard of review requires more than the bare assertion of legal conclusions. We need not accept as true legal conclusions or unwarranted factual inferences.") (internal citations and quotations omitted). Absent such knowledge, Verizon cannot be held liable for negligent supervision, and Booker has failed to state a claim upon which relief can be granted. Moreover, a plain reading of Booker's complaint does not support her assertion that her complaint inherently alleged knowledge. Thus, accepting all "well-pled allegations of the complaint" as true, we find no error in the district court's dismissal of Booker's negligent supervision claim.

## B.

Booker also challenges the district court's dismissal of her vicarious liability claims. Specifically, Booker challenges the dismissal of her intentional infliction of emotional distress, civil conspiracy and libel claims, which are all premised upon Verizon's vicarious liability for the tortious conduct of its employees.

Under certain conditions, an employer will be vicariously liable for the torts of its employee. *See Osborne v. Payne*, 31 S.W.3d 911 (Ky. 2000). "The critical analysis is whether the employee or agent was acting within the scope of his employment at the time of his tortious act." *Id.* at 915. Generally, intentional torts are committed outside the scope of the employment. However, some intentional conduct is so closely related to the employment that it is considered within the scope of employment. The question of whether an

employee's conduct is within the scope of employment is a question of law, and the proper law to apply is the state law of Kentucky.

This Circuit, after careful review of Kentucky law, has developed certain guideposts to determine whether conduct is within the scope of employment. *See Coleman v. United States*, 91 F.3d 820 (6th Cir. 1996). The district judge, coincidently the same judge who decided the district court decision in *Coleman*, found the guideposts "an excellent analytical tool" and, thus, applied them to the instant case.

First, Kentucky courts consider whether "the conduct was similar to that which the employee was hired to perform." *Coleman*, 91 F.3d at 824. The district court concluded that Booker had established this element because the Verizon employee who sent the offensive message was allegedly a customer affairs representative hired to respond to customer complaints. While not explicit in the complaint that the offensive Verizon employee was hired for the purpose of responding to customer complaints, we find that one may infer from the complaint an attempt to allege such similar conduct. Accordingly, we conclude that the unnamed Verizon employee's conduct "was reasonably incident to [his or her] employment." *Coleman*, 91 F.3d at 825.

Second, Kentucky courts consider whether "the action occurred substantially within the authorized spacial and temporal limits of the employment." *Coleman*, 91 F.3d at 824. Again, although the complaint fails to allege specifically that the offensive conduct occurred on Verizon's premises during working hours, we conclude that allegations were sufficient to support the inference that the employee committed the conduct "within the authorized spacial and temporal limits of the employment." Indeed, the electronic message's time stamp indicates that the unnamed employee sent the message on a Monday at 4:04 p.m. - ostensibly during working hours. Thus, we agree with the district

court's conclusion that Booker has established this second factor.

Third, Kentucky courts consider whether "the action was in furtherance of the employer's business." *Coleman*, 91 F.3d at 824. Booker argues that the text of the message attempts to "influence the customer to continue using [Verizon's] product," or to discontinue his complaints, and, therefore, that it was calculated to advance Verizon's business. This argument is unsustainable. The text of the message clearly suggests that the recipient should discontinue his service with Verizon. *See supra*, note 1 ("[W]hy don't you put on your pampers and ask for your bobba OR cancel the service altogether!"); *id.* ("If you are having this much trouble getting INTERNET ACCESS, then go through another company."). Although this Court is bound to take all well-pled facts as true, it is not bound to accept unwarranted factual inferences. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The pleadings taken as a whole, which includes the text of the electronic message, do not support the conclusion that the offensive message was intended to benefit Verizon's business. *See Greenberg*, 177 F.3d at 514 (allowing consideration of documents not included in the complaint, but central to the plaintiff's claim, to be considered on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, without converting the motion into a summary judgment decision).

*Osborne v. Payne*, 31 S.W.3d 911 (Ky. 2000), is instructive on this issue. In *Osborne*, the plaintiff brought charges against a priest, Osborne, for the tort of outrageous conduct arising out of an extra-marital affair with the plaintiff's wife, and against the diocese under a vicarious liability theory for the negligent screening, supervision, and training of Osborne. *Id.* at 913. In granting summary judgment in favor of the diocese, the court held that even though Osborne was engaged in marital counseling, a typical pastoral function, the scope of the employment clearly did not include adultery. *Id.* at 915.

The same argument applies in this case by way of analogy. Although the unnamed employee was engaged in typical employment duties–responding to customer complaints–the employee stepped outside the scope of the employment by sending a highly offensive response to a customer complaint that cannot plausibly be interpreted as designed to advance Verizon's business goals. Moreover, the fact that the employee sent the electronic message from a personal electronic mail account, rather than from the business account, itself demonstrates that the employee contemplated that such action would be inappropriate if committed within the scope of his or her employment.

Furthermore, although Booker argued both in her brief and at oral argument that the employee's actions were calculated to advance the cause of Verizon in pacifying disgruntled customers, we conclude that such an argument cannot be sustained. Undoubtedly, Verizon desires to quiet customer complaints. We cannot agree, however, that it is beneficial to Verizon's business to pacify customer complaints through the methods employed here, *i.e.*, through the implicit threat of lawsuits and the offensively-worded suggestion that the customer discontinue his business with Verizon. Thus, we find that this factor weighs heavily in favor of Verizon.

Fourth, Kentucky courts consider whether "the conduct, though unauthorized, was expectable in view of the employee's duties." *Coleman*, 91 F.3d at 824. The district court concluded that "creating false third-party e-mail accounts and sending intentionally-offensive e-mails is not expected from company employees." We agree and find no need for further elaboration on this point.

In sum, we find Booker's vicarious liability claims fatally flawed. An employer simply cannot be held liable "under the doctrine of respondeat superior unless the intentional wrongs of the agent were calculated to advance the cause of the principal or were appropriate to the normal scope of the operator's employment." *Osborne*, 31 S.W.3d at 915.

Finding no such action here, we conclude that the district court did not err in dismissing Booker's vicarious liability claims.

Accordingly, we AFFIRM the decision of the district court dismissing Booker's vicarious liability and negligent supervision claims.