NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0376n.06

No. 09-5674

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Jun 21, 2010** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | |
| | ) | |
| NAT H. SANDLER, M.D., | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Defendant, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| BARBARA BOWDEN, Executrix for the | ) | |
| estate of Charles Markham Bowden, | ) | |
| Deceased, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  MERRITT, COLE, and COOK, Circuit Judges.

COOK, Circuit Judge.  Dr. Nat Sandler prescribed anti-depressants to Dr. Charles Bowden, a former patient from Sandler's private practice, who then committed suicide.  Bowden's estate ("Estate") sued Sandler in state court, alleging negligence.  Scottsdale Insurance, which provided coverage to Sandler's employer, Bluegrass Regional Mental Health ("BRMH"), brought this case, seeking a declaration of nonliability for Sandler's negligence in treating Bowden.  The district court granted summary judgment to Scottsdale, finding that the terms of the Scottsdale-BRMH insurance policy ("Policy") precluded coverage for Sandler's actions.  We affirm.

I.

Dr. Nat Sandler works as a psychiatrist for BRMH, a mental health clinic whose patients are charged on an ability-to-pay basis after extensive pre-treatment screening. Some ten years before joining BRMH, Sandler maintained a private practice where he treated Dr. Charles Bowden, an oral surgeon, for depression. Because both men practiced medicine, they interacted professionally, even after Sandler's treatment of Bowden ended. Harkening back to that decade-earlier doctor-patient relationship, Bowden phoned Sandler at BRMH complaining of depression and requesting a prescription for Prozac. Sandler explained that he worked for BRMH and, because Bowden did not seek treatment from BRMH, Sandler could not help him. Sandler even explicitly told Bowden not to become a BRMH patient. In deposition, Sandler recalled the conversation:

> [Bowden] could have applied. It would have been a lengthy process. He would have had to see two therapists. It would have been weeks. And I said to him, it's not—it's probably not practical for you to try to see me at [BRMH], and we just didn't really explore it further because you just can't come to [BRMH] and say I'm here to see Dr. Sandler, it doesn't work that way.

Bowden nevertheless pressed Sandler to just call in the Prozac prescription, which he ultimately did. A week later, Bowden called again and Sandler instructed him to double his dose. That same day, Bowden committed suicide.

The estate sued in state court, contending that Sandler's prescription of Prozac and his later dosage advice without performing a suicide-risk assessment violated the standard of care. Sandler maintained no personal malpractice coverage and BRMH's insurer, Scottsdale, denied coverage.

Scottsdale then took the initiative to obtain judicial confirmation of its coverage decision by bringing this declaratory judgment action in federal court.

Scottsdale's complaint maintained that the Policy did not cover Sandler's treatment of Bowden. The relevant portion of Section III of the Policy states:

> Each of the following is also an insured:
>
> A. Your employees and volunteers, but only for acts within the scope of their employment by you.
>
> B. Physicians, whether salaried or contracted by you, are insureds under this Coverage Part with respect to any CLAIMS arising from the rendering or failure to render professional services to your patients.

Scottsdale pointed out that Bowden never sought treatment from BRMH, never came to BRMH's facility, never paid BRMH, never went through BRMH's required patient-screening process, and never had a patient file maintained for him at BRMH. Thus, it contended, because Sandler acted outside the scope of his BRMH employment and because Bowden was not a BRMH patient, the Policy did not obligate it to cover BRMH for Bowden's injury under either subsection. The district court agreed and granted summary judgment to Scottsdale. We affirm.

II.

A.

We review a district court's grant of a motion for declaratory judgment de novo. *DaimlerChrysler Corp. v. Cox*, 447 F.3d 967, 971 (6th Cir. 2006). State law governs our interpretation of the policy, and "'the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review.'" *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)).

B.

To evaluate the Estate's claim that Scottsdale should cover Bowden's injury because Sandler treated him within the scope of his BRMH employment, we look to "what Kentucky courts consider to be within the scope of employment, even if those decisions did not occur in the context of insurance contract interpretation." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 566 n.5 (6th Cir. 2008). The Estate urges us to adopt the four-part test this court articulated in *Coleman v. United States*, 91 F.3d 820, 823–24 (6th Cir. 1996), but intervening Kentucky Supreme Court cases have clarified that whether the employer's purpose motivates the employee's action—an element *Coleman* instructed us to consider but did not make dispositive—controls our analysis[1]:

---

[1]A prior published panel decision does not bind a future panel when an intervening state court decision indicates that the state court "would have decided [the prior case] differently." *Blaine*

> In general, . . . the master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business. Thus, if the servant acts from purely personal motives . . . which are in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable.

*Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 52 (Ky. 2008) (quotation marks and citations omitted); *see also Patterson v. Blair*, 172 S.W.3d 361, 367–70 (Ky. 2005) (explicitly abrogating Kentucky precedent that focused on foreseeability in favor of a test examining only employee motive).

We find guidance in two cases that share a common—and ultimately dispositive—feature with this one. In *Papa Johns*, the Kentucky Supreme Court held that a pizza deliveryman acted outside the scope of his employment when he filed a false police report against a customer. It stated that "there seems no more certain way to send customers to another pizza place than to accuse them falsely of imprisoning delivery drivers when they are delivering pizza." 244 S.W.3d at 52. This court took a similar approach in *Booker v. GTE.net LLC*, holding that a customer service representative who sent a belligerent message in response to a customer complaint acted outside the scope of employment in part because the message encouraged the customer to discontinue services with the company. 350 F.3d 515, 518–19 (6th Cir. 2003). These cases lead us to conclude that where an employee discourages a customer from forming or maintaining a relationship with the employer, his conduct is "in no way connected with the employer's interests," and thus falls outside

*Constr. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 350–51 (6th Cir. 1999).

the scope of his employment.  *Papa John's*, 244 S.W.3d at 52.

The Estate argues that BRMH's nonprofit status and charitable mission motivated Sandler's treatment of Bowden, and, on that basis, urges us to conclude that Sandler acted within the scope of his employment.  But whatever BRMH's purpose, when Sandler advised Bowden against becoming a BRMH patient, he—like the pizza deliveryman and customer service representative—discouraged a potential customer from forming a relationship with his employer.  Even if BRMH would have treated Bowden for free, precedent directs that Sandler could not have furthered BRMH's purpose by deterring Bowden from interacting with BRMH at all.  Thus, we find that Sandler's treatment of Bowden falls outside the scope of his BRMH employment.

C.

Bowden's estate also claims that the Policy covers Sandler as a physician rendering treatment to a BRMH patient.  The provision covers physicians treating "your patients," with "your" unequivocally referring to BRMH.  In concluding that Bowden was not BRMH's patient, the district court pointed out that BRMH did not assign Bowden's treatment to Dr. Sandler or know of Bowden's treatment. Moreover, Bowden did not go through BRMH's patient-screening process and BRMH lacked any patient records relating to Bowden.  Because Bowden sought treatment from Sandler and not BRMH, the district court properly concluded that Bowden established a doctor-patient relationship only with Sandler.  In fact, Sandler himself agrees that Bowden "wasn't a patient at" BRMH.  The Estate offers neither evidence contradicting the district court's factual findings nor

legal authority for its argument that a doctor-patient relationship with Sandler equates to such a relationship with BRMH.

Finally, the Estate argues that this court should interpret the policy to cover Bowden under the reasonable expectations doctrine, which entitles the insured (Sandler) to all coverage reasonably expected. *See Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212–13 (Ky. 1986). But "[t]he reasonable expectations doctrine is applicable only where the policy at issue is ambiguous." *Meyers v. Kentucky Med. Ins. Co.*, 982 S.W.2d 203, 209 (Ky. Ct. App. 1997). "Where the language of an insurance policy is clear and unambiguous," this court will not countenance an attempt to create an ambiguity. *Scottsdale*, 513 F.3d at 565 (quotation marks and citation omitted). The Policy clearly limits coverage to BRMH patients, or to actions taken by Sandler within the scope of his employment. Accordingly, the Estate fails to establish any basis Scottsdale's liability.

III.

For these reasons, we affirm the judgment of the district court.